IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-cv-00538

BREN SIMON,

    Plaintiff,

v.

THE UNITED STATES OF AMERICA,

    Defendant.

## UNITED STATES' ANSWER

The United States of America, by and through its undersigned counsel, hereby answers the complaint filed by Bren Simon on March 16, 2015 [Doc. # 1]:

### FIRST DEFENSE

The United States denies each and every allegation not specifically admitted below and otherwise submits the following responses to the separate paragraphs of Plaintiff's complaint:

### I.    PARTIES

1.    The Plaintiff is Bren Simon ("Mrs. Simon" or "Plaintiff"). Mrs. Simon is a citizen of the United States of America.

**ANSWER:** Admits.

2.    The Defendant is the United States of America.

**ANSWER:** Admits.

## II. JURISDICTION AND VENUE

3. Jurisdiction is conferred on this Court by Title 28, United States Code, Section 1346(a)(1) and Title 26, United States Code, Section 7422.

**ANSWER:** Admits that jurisdiction is conferred as to matters not at variance with Plaintiff's claim for refund. Otherwise denies.

4. Venue is proper in this Court as Mrs. Simon resides in Carbondale, Colorado.

**ANSWER:** Admits.

5. Mrs. Simon has complied with all administrative procedures and other precedents to filing this cause of action under 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422(a).

**ANSWER:** Admits.

## III. FACTS

6. In 1983, Plaintiff's husband, Melvin Simon ("Mel"), and his brother, Herb Simon ("Herb") purchased the Indiana Pacers, a franchise in the National Basketball Association (the "Pacers").

**ANSWER:** Admits that the Simons acquired an ownership interest in the Pacers in 1983, but avers that Defendant lacks knowledge or information sufficient to form a belief about the specific terms or structure of the transaction.

7. The Pacers were held in Pacers Basketball Corporation, which itself was a wholly owned subsidiary of MH Holdings, Inc. ("MH Holdings") Mel (through the Mel Simon Trust) and Herb each owned 50% of MH Holdings.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation(s) and therefore denies.

8. Mel did not have a controlling shareholder interest and could not exert unilateral control over either MH Holdings or the Pacers. Likewise, no ready market existed in which Mel's interest in MH Holdings could be sold.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation(s) and therefore denies.

9. Herb was the Chief Executive Officer of the Pacers and managed its operations.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation(s) and therefore denies.

10. In the early 2000s, the Pacers experienced a financial downturn and began to require significant cash infusions from Mel and Herb. The genesis of this downturn can be traced to November 19, 2004, when an on-court confrontation in Auburn Hills, Michigan, between Ron Artest of the Pacers and Ben Wallace of the Detroit Pistons escalated into a full scale brawl in the stands between several Pacers players and fans of the Detroit Pistons.

**ANSWER:** Admits that the on-court confrontation occurred. Defendant otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegation(s) and therefore denies.

11. Beginning with the "brawl," and continuing with a series of player arrests and other incidents occurring between 2005 and 2008, the Pacers became a civic and family embarrassment and lost significant fan support.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation(s) and therefore denies.

12. These events had a two-fold effect on the Pacers.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation(s) and therefore denies.

13. First, the events impacted the competitive level of the team. Several Pacers players were suspended for a number of games, ranging from one game to the entire season. In subsequent years, the entire roster of the Pacers was overhauled in an effort to put these incidents behind the franchise. The combination of suspensions and roster turmoil torpedoed the team's competitiveness: the 2004-2005 season would be the Pacers' last winning season until the 2011-2012 seasons.

**ANSWER:** Admits that Ron Artest, Stephen Jackson, Jermaine O'Neal, Anthony Johnson, and Reggie Miller faced suspensions during the 2004-2005 season ranging in time from one game to the remainder of the season. Admits that the Pacers roster changed in subsequent years. Admits that the Pacers' regular season win-loss record fell to .500 or below during the time period running from the 2004-2005 season through the 2010-2011 season, but avers that the Pacers qualified for the NBA playoffs both in the 2005-2006 season (the first season immediately following the "brawl,") and in the 2010-2011 season. Defendant otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegation(s) and therefore denies.

14. Second, these events were a public relations disaster. Enveloped by negative publicity, fans of the team stopped going to the games, buying Pacers merchandise, and supporting the Pacers. The team's losing record exacerbated this

4

downward spiral of fan support. During this timeframe, the Pacers consistently finished at or near the bottom the 30 NBA teams in attendance.

**ANSWER:** Admits that the "brawl" received media attention. Defendant otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegation(s) and therefore denies.

15. The decline in fan support had a devastating impact on the value of Mel's interest in the Pacers. During this period, the team was hemorrhaging cash. Substantial capital contributions and loans amounting to tens of millions of dollars per year were required from Mel and Herb to keep the franchise afloat.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation(s) and therefore denies.

16. In 2007, concerned with the Pacers' negative image and continuing operating losses, Mel approached Herb about selling the Pacers. Herb was not interested in selling.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation(s) and therefore denies.

17. Mel did not possess a unilateral right to force a sale of the Pacers. In addition, Mel could not transfer his shares in MH Holdings to anyone other than his son David Simon without Herb's consent.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation(s) and therefore denies.

18. As an alternative to a sale of the Pacers, Mel and Herb began discussing the possibility of restructuring the Pacers' ownership.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation(s) and therefore denies.

19. During 2008 and 2009, Herb, Mel, accountants at Katz Sapper & Miller LLP (trusted advisors who represented Herb, Mel, and other Simon family interests for many years), and others were involved in extensive discussions with respect to restructuring the Pacers' ownership.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation(s) and therefore denies.

20. Their goal was to reach an equitable agreement whereby Mel would be relieved of the burden of funding ongoing losses while permitting Herb to continue to operate the Pacers.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation(s) and therefore denies.

21. Their goal was to reach an equitable agreement whereby Mel would be relieved of the burden of funding ongoing losses while permitting Herb to continue to operate the Pacers.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation(s) and therefore denies.

22. An initial restructuring agreement was reached in June of 2008. This agreement, however, was subject to NBA approval.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation(s) and therefore denies.

23. In the fall of 2008 and continuing into 2009, the world economy crashed. The equity markets were particularly impacted, with the S&P 500 Index and Dow Jones Industrial Average ending 2008 down 33.8% and 39.5% respectively for the year, their largest annual losses since the Great Depression. The economic decline continued through the spring of 2009. This economic timeframe, which became known as "the Great Recession," also had a dramatic negative impact on the value of the Pacers.

**ANSWER:** Avers that, according to the National Bureau of Economic Research, the "Great Recession" began a year earlier, in December of 2007, and ended in June 2009. Admits that the Great Recession negatively affected many businesses in the United States. Admits that general stock market indices declined during 2008, but denies that plaintiff accurately stated the percentage declines in the referenced indices. Defendant otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegation(s) and therefore denies.

24. Because circumstances had drastically changed from those that existed in June 2008, Herb was unwilling to restructure the Pacers' ownership under the terms agreed to in June 2008. Herb thus insisted that he and Mel and their advisers begin renegotiating the terms of the restructuring agreement (which had not yet been approved by the NBA).

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation(s) and therefore denies.

25. On February 2, 2009, Herb and Mel entered into several agreements (an agreement and undertaking, an amendment and restatement of the MH Holdings shareholder agreement, and a conversion of Pacers Basketball Corporation to the

Pacers Basketball, LLC) that reorganized the relationship between Herb and Mel as it related to the Pacers (collectively, the "Reorganization").

**ANSWER:** Admits that Herb and Mel entered into an agreement entitled "Operating Agreement of Pacers Basketball, LLC" dated as of February 2, 2009. Defendant otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegation(s) and therefore denies.

26. The Reorganization was the culmination of a lengthy negotiation process, in which partners in the firm of Katz Sapper & Miller LLP played a significant role. Additionally, Herb and Mel were savvy and experienced businessmen, both skilled in making business deals and interested in striking the best deal for themselves in the Reorganization.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation(s) and therefore denies.

27. Mel received substantial consideration under the Reorganization, including, without limitation, the termination of his continuing obligation to fund losses and answer mandatory capital calls, a release from personal guarantees, and a preference for proceeds upon any sale of the Pacers.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation(s) and therefore denies.

28. On or about October 14, 2010, Mel's estate[1] timely filed a 2009 United States Gift (and Generation-Skipping Transfer) Tax Return, Form 709 (the "2009 Gift Tax Return") with the Internal Revenue Service. In the 2009 Gift Tax Return, Mrs.

---

[1] [Mr. Simon] passed away on September 16, 2009. (Complaint ¶ 28).

Simon consented to have gifts made by Mel in 2009 to be considered as made one-half by each spouse.

**ANSWER:** Admits that Bren Simon timely filed a 2009 United States Gift (and Generation-Skipping Transfer) Tax Return postmarked on October 15, 2010 and received by the Internal Revenue Service on October 19, 2010. Admits that, on the return, the spousal consent was elected on line 12 and executed on line 18 by Bren Simon as personal representative of Melvin Simon.

29. The 2009 Gift Tax Return was audited by the Commissioner of Internal Revenue (the "Commissioner"). The Commissioner issued a notice of deficiency to Mrs. Simon dated December 10, 2013 asserting that Mel made an additional taxable gift in 2009 and Mrs. Simon was responsible for one-half of that gift, in the amount of $41,5000,000 (the "Notice of Deficiency"). The Commissioner's erroneous adjustment resulted in a gift tax deficiency of $18,6750,000. A copy of the Notice of Deficiency is appended as Attachment 1 to Exhibit A and is incorporated by reference.

**ANSWER:** Denies the amounts[2] set forth in paragraph 29 and denies that the adjustments in the Notice of Deficiency were erroneous. Otherwise admits.

30. Ms. Simon paid, under protest, $21,372,328.43 of gift tax and interest on May 30, 2014 to the Commissioner.

**ANSWER:** Admits.

31. As set forth more fully herein below, on or about July 18, 2014, Plaintiff timely mailed to the Internal Revenue Service a Form 843, Claim for Refund and Request for Abatement (the "Claim for Refund"), a true and correct copy of which is

---

[2] The complaint contains typographical errors. The amount listed as $41,5000,000 should read $41,500,000, and $18,6750,000 should read $18,675,000.

9

attached as Exhibit A. The amount of refund requested was $21,372,328.43, or such greater amount as is legally refundable, plus additional allowable interest. Mrs. Simon disputed each allegation in the Notice of Deficiency. The name of the taxpayer on Claim for Refund is Bren Simon, Donor.

**ANSWER:** Avers that the name of the taxpayer on the Claim for Refund is simply "Bren Simon" with no other designation. Otherwise admits.

32. On January 18, 2015, the Claim for Refund was deemed denied under 26 U.S.C. § 6532(a)(1). Accordingly, this suit is timely commenced. No further action on the Claim for Refund has been taken in any judicial proceeding, including any proceeding in the United States Tax Court.

**ANSWER:** Admits that the Secretary did not render a decision before January 18, 2015 on the Claim for Refund and, accordingly, this suit is timely commenced. Admits that Defendant has not identified any other pending judicial proceeding involving the Claim for Refund. Defendant otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegation(s) and therefore denies.

33. As grounds for recovery of the amount claimed on the Claim for Refund, Plaintiff incorporates by reference the averments contained in the Claim for Refund.

**ANSWER:** To the extent that the factual allegations in the Claim for Refund repeat those in the complaint, the United States admits the incorporated allegations to the extent otherwise admitted in this answer in response to the specific allegations of the complaint and otherwise denies.

34. Plaintiff is the legal and beneficial owner of the Claim for Refund and has not assigned or transferred it, or any part hereof.

**ANSWER:** Admits.

### IV.   CLAIM FOR RELIEF
(Gift made by Mel in 2009)

35.   Mrs. Simon incorporates by reference the averments in ¶¶ 1-34 above.

**ANSWER:** The United States incorporates by reference its responses to paragraphs 1-34 above.

36.   The Commissioner's explanation for his assessment of additional gift taxes with respect to Mrs. Simon in the Notice of Deficiency is as follows:

> In addition to the gifts reported by this donor, it is determined that an additional gift representing one-half of gifts made by this donor's spouse, Melvin Simon, are attributable to her pursuant to the election made on the 2009 filed Form 709 to treat all gifts as having been made one-half by the spouse. IRC Section 2513.

**ANSWER:** Admits.[3]

37.   The notice of deficiency issued to Mel's estate ("Mel's Notice of Deficiency"), which is appended in relevant part as Attachment 2 to Exhibit A (with information not relevant to this case redacted), provides the Commissioner's explanation for his assessment of additional gift taxes and is as follows:

> It is determined that the conversion of Pacers Basketball Corporation to Pacers Basketball, LLC, in 2009 resulted in a taxable gift of $83,000,000.00. IRC Sections 2511, 2512.
>
> Alternatively, it is determined that the Melvin Simon Trust voting and liquidation rights lapsed upon conversion of Pacers Basketball Corporation to Pacers Basketball, LLC, and the lapse shall be treated as a transfer by gift pursuant to IRC Section 2704.

---

[3]   The block quote contained in the complaint is missing a definite article in the second line, and should read "representing one-half **of the** gifts made" rather than "representing one-half gifts made."

**ANSWER:** Admits.

38.    However, no gift occurred under 26 U.S.C. §§ 2511 and 2512 because (1) the Reorganization was made in the ordinary course of business, bona fide, and free of any donative intent as those terms are used in 26 C.F.R. § 25.2512-8 and (2) the rights exchanged by Mel and Herb in the Reorganization were for adequate and full consideration in money's worth as those terms are used in 26 C.F.R. § 25.2511-1(g)(1).

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation(s) and therefore denies.

39.    In addition, 26 U.S.C. § 2704 does not apply to the Reorganization because (1) the Reorganization was made in the ordinary course of business, bona fide, and free of any donative intent as those terms are used in 26 C.F.R. § 25.2512-8 and (2) no lapse of voting or liquidation rights occurred in the Reorganization.

**ANSWER:** Denies.

40.    Pleading in the alternative to ¶¶ 35-39 above, if any gift or lapse of voting or liquidation rights occurred as a result of the Reorganization, the amount of any gift under 26 U.S.C. §§ 2511 and 2512 or of any deemed transfer under 26 U.S.C. § 2704 is less than that alleged by the Commissioner in the Notice of Deficiency.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegation(s) and therefore denies.

### SECOND DEFENSE

To the extent Plaintiff's basis for a refund set forth in the complaint was not contained in Plaintiff's Claim for Refund and Request for Abatement, it constitutes a variance from the claim for refund filed with the Internal Revenue Service. This Court

lacks jurisdiction under 26 U.S.C. § 7422(a) to hear any such alternative claim. *E.g., Payne v. United States*, 500 F. Supp. 571, 574 (D. Colo. 1980).

### THIRD DEFENSE

Plaintiff is constrained by the duty of consistency and estopped from taking any position inconsistent with the Form 706 (United States Estate (and Generation-Skipping Transfer) Tax Return) filed by the Estate of Melvin Simon. *E.g., LeFever v. Commissioner,* 100 F.3d 778 (10th Cir. 1996); *Continental Oil Co. v. Jones*, 177 F.2d 508 (10th Cir. 1949).

//

WHEREFORE, the United States prays for judgment in its favor and against Plaintiff, denying the relief requested in the complaint and awarding the United States any other relief the Court deems just and proper.

Dated:     June 9, 2015                    Respectfully submitted,

CAROLINE D. CIRAOLO
Acting Assistant Attorney General

*/s/ Lindsay L. Clayton*
JAMES E. WEAVER
LINDSAY L. CLAYTON
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
202-305-4929 (Weaver)
202-307-2956 (Clayton)
202-307-0054 (f)
James.E.Weaver@usdoj.gov
Lindsay.L.Clayton@usdoj.gov

Of Counsel:
JOHN F. WALSH
United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of June, 2015, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

John William Porter (John.Porter@bakerbotts.Com)
Jeffrey Dean Watters , Jr. (Jeff.Watters@bakerbotts.Com)
Keri D. Brown (Keri.Brown@bakerbotts.Com)
BAKER BOTTS, LLP-HOUSTON
910 Louisiana Street One Shell Plaza, Suite 3000
Houston , Texas 77002-4995
Tel.: 713-229-1597
Fax: 713-229-2797
*Attorneys for Plaintiff*

*/s/ Lindsay L. Clayton*
LINDSAY L. CLAYTON
Trial Attorney, Tax Division
United States Department of Justice