IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-cv-00538

BREN SIMON,

       Plaintiff,

v.

THE UNITED STATES OF AMERICA,

       Defendant.

## [PROPOSED] SCHEDULING ORDER

### 1. DATE OF CONFERENCE AND APPEARANCES OF COUNSEL AND PRO SE PARTIES

| | |
|---|---|
| Date of Conference: | August 12, 2015; 9:45 AM (telephonic) |
| Location: | Byron Rogers U.S. Courthouse<br>1929 Stout Street, Denver, Colorado<br>Courtroom C-201 |
| Attendees: | James E. Weaver<br>Lindsay L. Clayton<br>Trial Attorneys, Tax Division<br>U.S. Department of Justice<br>P.O. Box 683<br>Washington, D.C. 20044<br>202-305-4929 (Weaver)<br>202-307-2956 (Clayton)<br>202-307-0054 (Fax)<br>James.E.Weaver@usdoj.gov<br>Lindsay.L.Clayton@usdoj.gov<br>*Counsel for the United States* |

John W. Porter
Jeffrey D. Watters, Jr.
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
(713) 229-1597 (Porter)
(713) 229-1630 (Watters)
(713) 229-2797 (Fax)
john.porter@bakerbotts.com
jeff.watters@bakerbotts.com
*Counsel for Bren Simon*

## 2. STATEMENT OF JURISDICTION

Jurisdiction is conferred on this Court as to matters not at variance with Plaintiff's claim for refund (if any) by Title 28, United States Code, Section 1346(a)(1) and Title 26, United States Code, Section 7422.  Venue is proper in this Court as Bren Simon resides in Carbondale, Colorado.

## 3. STATEMENT OF CLAIMS AND DEFENSES

a.   Plaintiff:

During 2009, Melvin Simon and his brother Herbert Simon, two experienced businessmen, entered into several agreement by which they reorganized their ownership interests in MH Holdings, Inc. and its wholly owned subsidiary, Pacers Basketball Corporation (the "Reorganization").  The Reorganization was the culmination of a lengthy negotiation process.   Mel received substantial consideration in the Reorganization, including without limitation the termination of his continuing obligation to fund losses and answer mandatory capital calls, a release from personal guarantees,

and a preference for proceeds upon any sale or relocation of the Pacers basketball team (which was owned by Pacers Basketball Corporation).

No gift resulted from the Reorganization because it was an arm's length business deal between Mel and Herb reached after significant negotiations.  The Reorganization was made in the ordinary course of business, bona fide, and free of donative intent as those terms are used in 26 C.F.R. § 25.2512-8.  Additionally, Mel received adequate and full consideration in money's worth in the Reorganization, as those terms are used in 26 C.F.R. § 25.2511-1(g)(1).  In addition, no lapse of a voting right or liquidation right ocurred under 26 U.S.C. § 2704(a).  Bren Simon is thus owed a refund of the $21,372,328.43 of gift tax and interest she paid because Melvin Simon did not make an unreported gift in 2009.

In the alternative, to the extent that the Court determines a gift did occur, the amount of the gift as alleged in the Notice of Deficiency issued by the Internal Revenue Service is overstated.

b.   Defendant:

Herbert and Melvin Simon purchased the Indiana Pacers basketball team in the 1980s.  Over the years, they held the Indiana Pacers through several different organizational structures.  This case centers on a particular reorganization of Herbert and Melvin Simons' respective interests in the various entities that ultimately owned the Indiana Pacers, along with certain other assets.  The reorganization occurred not long before Melvin Simon's death in 2009.  The reorganization was complex, and significantly changed the nature of Melvin Simon's ownership interest in the entities

involved.  The reorganization also substantially reduced Melvin Simon's ability to control the management of the Indiana Pacers.

After evaluating the reorganization, the Internal Revenue Service concluded that the transaction resulted in a gift.  The Internal Revenue Service made its determination on the basis of two alternative theories.  First, the Internal Revenue Service determined that there was a taxable gift under 26 U.S.C. §§ 2501 and 2511-2512. Under 26 U.S.C. § 2501, a tax is imposed on the transfer of property by gift.  This tax applies to a broad range of transactions, regardless of "whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible." 26 U.S.C. § 2511.  Donative intent on the part of the transferor is not an essential element in the application of the gift tax; rather, the determination depends on "the objective facts of the transfer and the circumstances under which the transfer is made."  Treas. Reg. § 25.2511-1(g)(1).

The methodology for valuing the "gift" is provided in 26 U.S.C. § 2512.  Where property is transferred "for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift."  26 U.S.C. § 2512(b).  "All relevant facts and elements of value as of the time of the gift" must be considered in performing these computations.  Treas. Reg. § 25.2512-1.  The gift tax does not apply only to transfers that "accord with the common law concept of gifts," but rather applies to "sales, exchanges, and other dispositions of property" where "the value of the property transferred by the donor exceeds the value in money or money's worth of the consideration given therefor."  Treas. Reg. § 25.2512-8.  This rule applies unless the

4

transfer is "made in the ordinary course of business (a transaction which is bona fide, at arm's length, and free from any donative intent)." *Id.* With respect to this standard, transfers among family members merit increased scrutiny, and there is a presumption that a transfer between family members is a gift. *E.g. Estate of True v. Commissioner*, 390 F.3d 1210, 1238 (10th Cir. 2004).

The Internal Revenue Service applied these standards, and determined that the reorganization resulted in a gift from Melvin to Herbert Simon. The basis for this position is that the reorganization was not made in the ordinary course of business and that there was inadequate consideration flowing from Herbert to Melvin in exchange for the property that Melvin relinquished in the reorganization. As a result, the Internal Revenue Service concluded that the gift tax applied to the reorganization.

The Internal Revenue Service's alternative position was based on rules related to the gift tax treatment of lapsed voting or liquidation rights. Under 26 U.S.C. § 2704(a)(1), if "there is a lapse of any voting or liquidation right in a corporation or partnership," and "the individual holding such right immediately before the lapse and members of such individual's family hold, both before and after the lapse, control of the entity," then the lapse is treated as a transfer by gift, or a transfer includible in the decedent's gross estate, whichever applies. Rather than referring to the valuation rules in 26 U.S.C. § 2512, under 26 U.S.C. § 2704(a)(2) the amount of the transfer is determined to be "the excess (if any) of the value of all interests in the entity held" by the transferor "immediately before the lapse (determined as if the voting and liquidation rights were nonlapsing), over the value of such interests immediately after the lapse."

Under 26 U.S.C. § 2704(c)(2)(C), a brother is considered to be a "member of the family" for the purposes of these rules.

The Internal Revenue Service determined that these rules applied to the transaction between Melvin and Herbert Simon.  Based on the Internal Revenue Service's understanding, prior to the reorganization, Melvin held certain voting and liquidation rights that he no longer possessed after the reorganization.  Herbert Simon is Melvin Simon's brother, and the two controlled the various entities that ultimately owned the Indiana Pacers prior to the reorganization.  Herbert Simon continued in a position of control after the reorganization.  Therefore, the Internal Revenue Service determined that 26 U.S.C. § 2704(a) applied to the lapse in rights, and resulted in a gift from Melvin to Herbert Simon.  Because 26 U.S.C. § 2704 contains its own valuation provision, the provisions of 26 U.S.C. § 2512 (and Treas. Reg. § 25.2512-8) do not apply.  Therefore, it does not matter whether the reorganization occurred in the ordinary course of business.

In this case, Defendant, the United States, denies that the Internal Revenue Service's determinations were incorrect.  As a result, the United States disputes Plaintiff's claim that the amounts assessed against her are erroneous, and denies that she is entitled to a refund of gift tax

## 4. UNDISPUTED FACTS

The following facts are undisputed:

1. The Plaintiff is Bren Simon ("Mrs. Simon" or "Plaintiff"). Mrs. Simon is a citizen of the United States of America.

2. The Defendant is the United States of America.

3. Mrs. Simon resides in Carbondale, Colorado.

4. Melvin Simon ("Mel") is the late husband of Mrs. Simon. He passed away on September 16, 2009.

5. Mel and his brother, Herbert Simon, acquired ownership of the Indiana Pacers in 1983.

6. On November 19, 2004, a confrontation occurred in Auburn Hills, Michigan between certain Indiana Pacers and Detroit Pistons players and some members of the public in attendance (the "brawl"). The brawl received national media attention.

7. Following the brawl, Pacers players Ron Artest, Stephen Jackson, Jermaine O'Neal, Anthony Johnson, and Reggie Miller were suspended for various lengths of time ranging from one game up to the remainder of the season (in the case of Ron Artest).

8. The Pacers' regular season win-loss record fell to .500 or below during the time period running from the 2004-2005 season through the 2010-2011 season, but the Pacers qualified for the NBA playoffs both in the 2005-2006 season (the first season immediately following the brawl) and in the 2010-2011 season.

9. The "Great Recession" began in December of 2007 and ended in June 2009 and negatively affected many businesses in the United States.

10. General stock market indices declined throughout the Great Recession.

11. Mel and Herbert Simon entered into an agreement entitled "Operating Agreement of Pacers Basketball, LLC" dated as of February 2, 2009.

12. Mrs. Simon timely filed on behalf of Mel a 2009 United States Gift (and Generation-Skipping Transfer) Tax Return postmarked on October 15, 2010 and received by the Internal Revenue Service on October 19, 2010 (the "2009 Gift Tax Return"). On the return, the spousal consent was elected on line 12 and executed on line 18 by Bren Simon as personal representative of Melvin Simon.

13. The 2009 Gift Tax Return was audited by the Commissioner of Internal Revenue (the "Commissioner"). The Commissioner issued a notice of deficiency to Mrs. Simon dated December 10, 2013 asserting that Mel made an additional taxable gift in 2009 and Mrs. Simon was responsible for one-half of that gift, in the amount of $41,500,000 (the "Notice of Deficiency"). The Commissioner's adjustment resulted in a gift tax deficiency of $18,675,000.

14. Mrs. Simon paid, under protest, $21,372,328.43 of gift tax and interest on May 30, 2014 to the Commissioner.

15. On or about July 18, 2014, Mrs. Simon timely mailed to the Internal Revenue Service a Form 843, Claim for Refund and Request for Abatement (the "Claim for Refund"). The amount of refund requested was $21,372,328.43, or such greater amount as is legally refundable, plus additional allowable interest. Mrs. Simon disputed each allegation in the Notice of Deficiency. The name of the taxpayer on Claim for Refund is Bren Simon.

16. The Secretary did not render a decision before January 18, 2015 on the Claim for Refund and, accordingly, this suit is timely commenced.

17. Mrs. Simon is the legal and beneficial owner of the Claim for Refund and has not assigned or transferred it, or any part hereof.

8

### 5. COMPUTATION OF DAMAGES

Bren Simon seeks a refund of tax and interest paid of $21,372,328.43, or such other amount as may be legally refundable, plus interest as provided by law.

The United States has no claim for damages.

### 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

a. Date of Rule 26(f) meeting: July 15, 2015.

b. Names of each participant and party he/she represented.

John W. Porter and Jeffrey D. Watters, Jr. appeared on behalf of Bren Simon.

Lindsay L. Clayton and James E. Weaver appeared on behalf of the United States.

c. Statement as to when Rule 26(a)(1) disclosures were made or will be made.

The parties made their initial disclosures on July 29, 2015, producing documents on that day and on a rolling basis thereafter.

d. Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).

None.

e. Statement concerning any agreements to conduct informal discovery:

The parties discussed the potential for informal discovery. The parties have agreed to make significant document productions as part of their disclosures, both initially on July 29th and on a rolling basis thereafter. Because most of the witnesses in this case are not under either party's control, the parties were unable to identify

9

substantial opportunities for informal witness interviews.  The parties have agreed to continue discussing the potential for further informal discovery as the case progresses, and will revisit this issue if additional opportunities for informal discovery arise.

f.     Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.

The parties agree to use a unified exhibit numbering system.  The parties also agree that a phone line will be provided at all depositions to allow anyone who is not the deponent to appear telephonically if he or she chooses.

g.     Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.

The parties do not anticipate that their claims or defenses will involve extensive electronically stored information or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.  Specifically, Counsel for the United States has informed Counsel for Plaintiff that the Internal Revenue Service has represented that it does not possess significant electronic records relevant to this case.  Further, Counsel for Plaintiff has represented to Counsel for the United States that electronic records relevant to this case were gathered by attorneys for Plaintiff in connection with prior litigation.  Counsel for Plaintiff has been diligently reviewing those files and intends to make a significant production in connection with its initial disclosures.  Plaintiff noted that it is possible that some of the documents in the collection from the prior litigation may be privileged, protected as work product, and/or subject to a protective order.  The parties intend to address these claims as they arise.

Based on their conversations, at this time the parties do not anticipate significant issues between the parties related to electronic discovery.

h.      Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.

Plaintiff is open to settlement discussions at any time during the litigation. Based on the United States' initial evaluation of the case, the United States submits that settlement discussions will be most productive after there has been more significant factual development through discovery and after the parties have exchanged expert reports. The parties have agreed to discuss settlement as appropriate throughout this litigation, and plan to revisit this issue after expert reports are exchanged.

### 7. CONSENT

All parties    ☐ [have]    ☑    [have not] consented to the exercise of jurisdiction of a magistrate judge.

### 8. DISCOVERY LIMITATIONS

a.      Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.

The parties do not propose any changes to the presumptive number of interrogatories set forth in the Federal Rules of Civil Procedure.

The parties do propose that the presumptive limit of depositions be expanded for the purposes of this case to allow each party to take no more than **25 depositions.** As set forth in Part 9(e), this case involves a large number of fact witnesses who possess

11

information relevant to both parties' claims and defenses. Further, as set forth in Part 9(d), this case is likely to involve significant expert testimony. To the best knowledge of the parties, the majority of these witnesses have never been deposed concerning the matters at issue in this case. Therefore, the information cannot be obtained from another source that is more convenient, less burdensome, or less expensive. Fed. R. Civ. P. 26(b)(2)(C)(i). As discovery has not commenced, neither party has yet had an opportunity to gather this information through discovery. Fed. R. Civ. P. 26(b)(2)(C)(ii). Finally, given that these fact witnesses possess critical information and considering that the amount in controversy exceeds $21 million, the burden of the additional depositions does not outweigh its likely benefit in resolving this case. Fed. R. Civ. P. 26(b)(2)(C)(iii). In sum, an expansion of the number of allowed depositions to 25 is merited because it will allow both parties a sufficient opportunity to develop the facts underlying this case.

b.      Limitations which any party proposes on the length of depositions.

The parties do not propose any additional limits on the length of depositions beyond those set forth in the Federal Rules of Civil Procedure.

c.      Limitations which any party proposes on the number of requests for production and/or requests for admission.

The parties do not propose any more than twenty-five (25) requests for production and/or requests for admission.

d.      Other Planning or Discovery Orders

The parties do not propose any other planning or discovery orders at this time.

12

## 9. CASE PLAN AND SCHEDULE

a.   Deadline for Joinder of Parties and Amendment of Pleadings: **September 16, 2015.**

b.   Discovery Cut-off: **July 28, 2016.**

c.   Dispositive Motion Deadline: **August 18, 2016.**

d.   Expert Witness Disclosure

   1.   The parties shall identify anticipated fields of expert testimony, if any.

   The parties anticipate expert witness testimony concerning (1) the value of the Indiana Pacers and (2) the value of Mel's interests in property subject to the "Reorganization" identified at ¶25 of the Complaint (Dkt. # 1), both before and after the Reorganization.  To the extent not addressed by the expert testimony above, Plaintiff anticipates expert testimony concerning whether the Reorganization was in the ordinary course of business and bona fide.  Defendant does not necessarily agree that the additional topics proposed by Plaintiff are appropriate for expert testimony, but will address those issues as the case progresses.

   2.   Limitations which the parties propose on the use or number of expert witnesses.

   The parties propose that each party be entitled to call no more than four (4) expert witnesses.

   3.   The parties shall designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before **April 15, 2016.**

    4.      The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before **June 2, 2016**.

e.     Identification of Persons to Be Deposed:

1. Bren Simon (7 hours)
2. Herbert Simon (7 hours)
3. David Simon (6 hours)
4. Stephen Simon (6 hours)
5. Bruce Jacobson (6 hours)
6. Mark Bernstein (6 hours)
7. Joshua Malarsky (6 hours)
8. James T. Morris (5 hours)
9. W.F. Fuson (5 hours)
10. Kevin D. Bower (5 hours)
11. Brian Fennerty (6 hours)
12. Robert Salyers (6 hours)
13. Donnie Walsh (7 hours)
14. Larry Bird (7 hours)
15. Harvey Benjamin (6 hours)
16. One or more representatives of the Indiana Pacers (7 hours)
17. One or more representatives of Baker & Daniels LLP (5 hours)
18. One or more representatives of Katz, Sapper & Miller (7 hours)
19. One or more representatives of KSM Business Services, Inc. (5 hours)

      20.      R. Christopher Rosenthal, Ellin & Tucker, Chartered (7 hours)

      21.      Lawrence M. Pullen, Ellin & Tucker, Chartered (7 hours)

      22.      Any expert witness disclosed by either party under part (d), above.

(7 hours)

f.     Deadline for Interrogatories: **June 23, 2016.**

g.     Deadline for Requests for Production of Documents and/or Admissions: **June 23, 2016.**

## 10. DATES FOR FURTHER CONFERENCES

a.     Status conferences will be held in this case at the following dates and times:

b.     A final pretrial conference will be held in this case on _____ at o'clock \_\_\_\_\_m. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

## 11. OTHER SCHEDULING MATTERS

a.     Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement.

      At this time, there are no discovery or scheduling issues on which counsel after a good faith effort, were unable to reach an agreement.

b.     Anticipated length of trial and whether trial is to the court or jury.

      The parties anticipate a 6-day trial to the Court.

c.     Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/

Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building, 103 Sheppard Drive, Durango, Colorado 81303-3439.

None.

### 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all pro se parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13. AMENDMENTS TO SCHEDULING ORDER

This scheduling order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado, this          day of          , 20    .

BY THE COURT:

_____
United States Magistrate Judge

APPROVED:

CAROLINE D. CIRAOLO
Acting Assistant Attorney General

| | |
|---|---|
| */s/ Lindsay L. Clayton* | */s/ John W. Porter* |
| JAMES E. WEAVER | John W. Porter |
| LINDSAY L. CLAYTON | Keri D. Brown |
| Trial Attorneys, Tax Division | Jeffrey D. Watts |
| U.S. Department of Justice | BAKER BOTTS L.L.P. |
| P.O. Box 683 | One Shell Plaza |
| Washington, D.C. 20044 | 910 Louisiana Street |
| 202-305-4929 (Weaver) | Houston, Texas 77002-4995 |
| 202-307-2956 (Clayton) | (713) 229-1597 |
| 202-307-0054 (f) | (713) 229-2797 (Fax) |
| James.E.Weaver@usdoj.gov | |
| Lindsay.L.Clayton@usdoj.gov | *Counsel for Bren Simon* |

Of Counsel:
JOHN F. WALSH
United States Attorney

*Counsel for the United States*

CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of August, 2015, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

>James E. Weaver
>Lindsay L. Clayton
>Trial Attorneys, Tax Division
>U.S. Department of Justice
>P.O. Box 683
>Washington, D.C. 20044
>202-305-4929 (Weaver)
>202-307-2956 (Clayton)
>202-307-0054 (Fax)
>James.E.Weaver@usdoj.gov
>Lindsay.L.Clayton@usdoj.gov
>*Counsel for the United States*

>*/s/ Jeffrey D. Watters, Jr.*
>Jeffrey D. Watters, Jr.