IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-cv-00538-REB-KMT

BREN SIMON,

        Plaintiff,

  v.

THE UNITED STATES OF AMERICA,

        Defendant.

---

**ADDENDUM TO THIRD JOINT MOTION TO EXTEND CASE DEADLINES**

---

# Excerpts from Transcript of Hearing held on

# November 14, 2016 in the related case of

# *In re Motion for Protective Order*, No. 16-mc-00191-KMT

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF COLORADO

 3    Case No. 16-mc-00191-KMT

 4    _____

 5    In Re:  MOTION FOR PROTECTIVE ORDER

 6    _____

 7

 8          Proceedings before KATHLEEN M. TAFOYA, United States

 9    Magistrate Judge, United States District Court for the

10    District of Colorado, commencing at 1:27 p.m., November 14,

11    2016, in the United States Courthouse, Denver, Colorado.

12    _____

13          WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

14    ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

15    _____

16                            APPEARANCES

17          JOHN PORTER, Attorney at Law, appearing for the

18    plainfiff, Bren Simon.

19          JAMES WEAVER and LANDON YOST, Attorneys at Law,

20    appearing for the IRS.

21          HEATHER PERKINS, DAVID HERZOG and DAVID KELLY,

22    Attorneys at Law, appearing for the Pacers Group.

23    _____

24                          MOTION HEARING

25
```

```
 1                P R O C E E D I N G S

 2              (Whereupon, the within electronically recorded

 3   proceedings are herein transcribed, pursuant to order of

 4   counsel.)

 5              THE COURT:  All right.  We are here in Case No.

 6   16MC191.  This is captioned In re: Motion for Protective

 7   Order, which is kind of an understatement, but anyway, that's

 8   the caption.

 9              May I have appearances, please, first for

10   plaintiffs.

11              MR. PORTER:  Your Honor, John Porter, counsel for

12   Bren Simon plaintiff in the underlying case.

13              THE COURT:  All right.  And then counsel for IRS.

14              MR. WEAVER:  Your Honor, James Weaver and Landon

15   Yost on behalf of United States Department of Justice.

16              THE COURT:  All right.  And then counsel for the

17   group bringing the Motion for Protective Order, which I think

18   if it's okay with all of you we'll call the "Pacers Group."

19   I think that's what you called yourselves.

20              MS. PERKINS:  Yes, Your Honor.  Heather Perkins of

21   the Denver office of Faegre Baker Daniels on behalf of Pacers

22   Group.  Also with me are my colleagues David Herzog and

23   Daniel Kelly from our Indianapolis office.  And Mr. Kelly

24   will be handling the argument today.

25              THE COURT:  All right.  Welcome to Denver and --
```

Page 3

```
 1  well, for all of you, I guess.  Nobody is really local,

 2  right?  Except -- except you.  There you go and me.

 3          Okay.  So we are here today technically, according

 4  to our docket, on Document No. 1, Motion for Protective

 5  Order; and Document No. 2, Motion for Protective Order.  Now,

 6  of course, those two motions are the same motion.  No. 1 is

 7  actually -- so that our record is a little bit clearer, it

 8  actually is a compilation of what was filed in the Indiana

 9  court.  So it consists of a number of documents, which,

10  unfortunately, the document numbers don't actually coincide

11  exactly with our document numbers.  Something must have been

12  left out or something, but anyway, I have read all this.

13          I did go through Document No. 1, which is 671

14  pages.  And I looked -- although I won't -- wouldn't say with

15  great care at every page.  So I know what's in there because

16  I was a bit confused.  And I appreciate the parties filing

17  the Joint Statement of Open Issues, which is Document No. 17.

18  This is pretty much what I had written down, too, as being

19  the primary things we needed to discuss today.

20          There is really a Motion for Protective Order filed

21  by the Pacers Group and then there is a Motion to Compel

22  filed by the United States.  That Motion to Compel is not

23  really highlighted in our documents, but we'll take care of

24  that with the minutes today because the Motion to Compel is

25  fully briefed and I did read it.  And let's see if I can give
```

 1   my -- give my clerk some guidance.

 2            The Motion to Compel is our Document 1-21.  The

 3   Pacers response to that is Document 1-31.  The IRS's reply is

 4   1-33.  And I would like all of you to check me on this, but

 5   as I was going through, I believe that the last Proposed

 6   Stipulated Protective Order that was not agreed upon, but it

 7   was the last one, I think, sent by the IRS.  And the red-line

 8   version of that is that Document 1-15, which would have been

 9   in your Indiana case 14-31.  It's Government's Exhibit AA,

10   but I can't remember now what it's an exhibit to.  But I

11   think -- I think that's the last one, and that's what I'm

12   kind of working from.  So if I'm wrong, you will need to let

13   me know so I can get the right one.  But that seemed to have,

14   as the red-line parts, the theory that everybody is

15   protesting, you know; the things that are -- you highlighted

16   for me in your Joint Statement of Open Issues.

17            So I didn't find anything in your Joint Statement

18   that I wasn't prepared to talk about today, except that I

19   will tell you that on the Motion to Compel, my inclination is

20   to talk about first the Protective Order, decide what that's

21   going to look like, then have the Pacers Group produce, and

22   have the IRS and n see what they've got.

23            I think that makes more sense than arguing about

24   every detail, although I know, I fully understand you're not

25   going to get everything you asked for.  However, I will tell

```
 1   the Pacers Group that when we get through, I expect you to

 2   produce, in accordance with the request, not your own

 3   desires, right.  I don't -- it's not going to be a matter of

 4   you don't think you should have to produce because of X, Y,

 5   Z.  It's going to be:  Here is the Protective Order that the

 6   Court is willing to enter.  You are to respond to these

 7   discovery requests the way that you believe you should

 8   respond, right.  I'm not going to tell you exactly what to

 9   do.  I'm not trying to tell you you can't make objections and

10   have your objections on record.

11           In my experience, most of the time you do

12   objections and you respond anyway.  So I will tell you that.

13   So I don't like "objections not relevant."  For instance, I

14   don't think we have many of those, but "objections not

15   relevant" and then you don't respond.  You may not think it's

16   relevant, but that's beside the point, whether you think it's

17   relevant or not.  It's what was asked for, okay.  So I will

18   be a little more specific about that when we get to it, but I

19   think that's the way to do it, and then have IRS look at

20   everything that they've asked for.

21           And I don't mean to leave Mrs. Simon out of this,

22   either.  It's just the Motion to Compel was filed by her.

23   So -- but look at it.  And then what I want you to do is make

24   an assessment of, not just whether or not they fully complied

25   the way you think they should, but I want you to be able to
```

Page 6

```
 1   tell me later, if you're going to file another Motion to
 2   Compel, why you need it, because if you've already got it, I
 3   don't think you need it again, right, unless you have to
 4   prove that they have it.
 5             And I know that's kind of vague but, you know,
 6   sometimes -- sometimes the proof is that you've got to prove
 7   that someone actually has the document.  If that's the case,
 8   then I can see why you want it produced from the Pacers
 9   Group; but if it's a financial statement or something like
10   that that you already have from some other entity -- I'm
11   thinking, in particular, of course, the accountants -- I
12   don't see why you need it from them.  And so if you want it,
13   then you will have to pay for it.  So we'll, you know, do it
14   kind of that way.  If you want them to do double work, but
15   we'll talk about all of that.
16             I know that there's some issues about I think it's
17   Herbert and -- is it Steven?  I think that you don't want to
18   have to produce the same documents that's coming from then,
19   and I think that's reasonable and I think the IRS said it
20   wasn't really looking for that.  But I don't want to do this
21   in a vacuum, but I want you to be able to see what you have
22   and then be able to specifically articulate what you think is
23   missing and why you think you should get it.  And that's
24   another informal conference.  We will do that by telephone,
25   if necessary.
```

 1              I doubt there is very much room for compromise in

 2    this case and that's usually what an informal request is for,

 3    but I really like to have them because I'm a person who is

 4    going to say to you, What do you want?  I don't care what you

 5    asked for, right.  You care, for instance, because you're

 6    responding to the subpoena so you care what they asked for,

 7    and you may be reading it with a great deal of legal

 8    expertise.

 9              What I want to know is, what do you really want?

10    What is this you're trying to get?  And then I'm going to ask

11    Pacers Group, Why won't you give it to them?  It's as simple

12    as that.  And I would like to try to make it easy and

13    practical, okay, without -- without obviating your

14    objections.  You know, if you have one, make them, but -- but

15    I would rather get to the heart of it.

16              Okay.  So let's -- let's get to the heart of it by

17    talking first about protective order, if that's all right

18    with all of you.  I think that's probably the best thing to

19    start with.  And I have a couple of feelings about some of

20    these things, but I think I would rather hear your argument.

21              While I did read everything pretty carefully, as

22    far as all the motions go, I would rather you not just harp

23    on exactly what you put in the papers because I did just read

24    that over the last few days, so I think I understand.  But if

25    you think there is something that maybe could be better

 1   explained in person, that's the purpose of this hearing.

 2          In particular, I'm kind of interested in the

 3   practical reality of having any entity, whether it's the IRS

 4   or anyone else, a litigant in a proceeding, hand over to you,

 5   even just in copy form, all the information that they've

 6   gained from someone else, having you mark it as

 7   "Confidential" and then, What the heck for? is my opinion.  I

 8   don't understand why that's even practical or reasonable, in

 9   terms of this case, because you're not going to be around to

10   object.

11          If, for instance, the IRS has something of yours

12   that they want to present to the Court, the normal practice

13   would be it's part of a -- part of a protective order.  So

14   the IRS would file that thing confidential, under seal.  You

15   would have three days -- if you were a party to the case, you

16   would have three days to file your own Motion to Restrict

17   under our local rules.  That's putting the burden on the

18   party that actually produced the document.  But, in the first

19   instance, the one filing it has to file it under restriction.

20   So three days later, then you file your motion.  And then we

21   have a little motions practice if we need to, but you're not

22   going to be there to do that.  So when the IRS attaches it to

23   something, what's the practical reality of what will happen

24   to it?

25          My feeling is that anything that is produced in

In Re: Motion for Protective Order

**Motion Hearing**
**November 14, 2016**

1  terms of a case can only be used for that case.  It's not

2  discovery in any other case.  It's not discovery for the

3  public consumption.  It's not discovery for the newspapers.

4  And while people may be interested in the finances of a, you

5  know, team like the Pacers, unless it's part of this case,

6  there is no reason for that to be made public.

7          On the other hand, there is no -- there is not

8  going to be anyone to argue with you -- argue your side of

9  the case as far as why it should be under restriction.  So I

10  don't understand what good it does you, number one.  And,

11  number two, I think it's very odd.  I mean, I've never seen

12  that happen and probably not going to let you do that.  So

13  that's your uphill battle, so I'm kind of giving you some

14  notice on that.

15          So that's something that, I think, is real

16  important that I would like to hear from all the parties

17  about is, how you see this working if I were to grant that

18  and what you would get out of it.

19          And then the second thing is I don't -- I don't

20  really think that I have the power to tell the IRS that they

21  should not comply with their duty to report crimes.  Now,

22  usually, this goes the other way.  What people are worried

23  about is somebody getting the discovery and calling up the

24  IRS and saying, Ha, ha, ha, I see some tax fraud here, right.

25  That's not going to happen in this case because this is a tax

Page 10

```
 1   case.
 2           So that -- I mean, they would have to find evidence
 3   of a Department of Justice kind of crime.  And that seems --
 4   I won't say, you know, it couldn't happen, but in a case like
 5   this, it just doesn't seem like it would be the kind of thing
 6   that would happen.
 7           So I'm not sure what you're worried about, and
 8   you're going to have to convince me that I have the power to
 9   do that because I don't think I do.  I mean, I think the way
10   that things are structured, federal agencies have a duty do
11   that.  I think most federal employees have a duty to do that,
12   having been one for 20 years -- actually, almost 30 now,
13   but -- so -- and I'm not saying the Court necessarily has an
14   obligation to do that, but I do think IRS probably does.
15           And I don't -- I don't think they need my
16   permission.  But even if I were to give them my permission, I
17   certainly don't think that they have to notice the person
18   they think committed a crime, right.  I mean, if they're
19   going to investigate you, they're probably going to do it on
20   the QT as long as they can.  Just makes sense to me.
21           So -- so those are a couple of the provisions that
22   I don't understand really where you're going with it or why
23   you care about it very much and I don't -- I don't know how I
24   can do it.  So I would like to hear from you specifically on
25   that, but anything else you would like to say.
```

In Re: Motion for Protective Order

**Motion Hearing**
**November 14, 2016**

1    It would be best if you would go to the podium, we

2    would get a better record.

3         MR. KELLEY:  Thank you, Your Honor.

4         Is there a particular order in which you would like

5    us to address those issues?

6         THE COURT:  No.

7         MR. KELLEY:  Okay.

8         In that case, I'll go in the order in which you

9    presented the information.

10        So the first question that I believe you asked was,

11   What is the practical reality of our reviewing the

12   information that has been produced by other parties and

13   nonparties to this action?  And I think the answer to that is

14   pretty simple.  Most of the discovery, from my understanding

15   based on my conversations with Mr. Weaver and Mr. Porter --

16   less so with Mr. Porter -- is that all of the entities and

17   parties are using some form of electronic discovery.  We use

18   Relativity, I believe the Government does as well, but we can

19   use whatever form of electronic discovery is agreeable to

20   anyone.

21        We can take -- it's called a "load file," and stop

22   me if I'm treading over ground that you're very familiar

23   with.  But we can take the information in whatever format it

24   will be presented to us, load it into our document platform

25   and then have Faegre Daniels staff and lawyers review the

In Re: Motion for Protective Order

**Motion Hearing**
**November 14, 2016**

Page 54

```
 1   as a litigant in this case in which we're not a litigant in
 2   which we've already spent over $100,000 complying with these
 3   multiple demands for documents.
 4           THE COURT:  Except you haven't given any.  So it's
 5   kind of hard for the Court to think that it should be worth
 6   $100,000 if you haven't given up any.
 7           UNIDENTIFIED SPEAKER:  I'll hand up a book, Your
 8   Honor.  We've told -- we've told Mr. Weaver for months, Here
 9   are all these documents.  If you will just accord us the same
10   respect that you've accorded the NBA, you can have the
11   documents, but we can't just produce them willy-nilly without
12   being able to identify any of them as confidential, because
13   we have obligations to the National Basketball Association
14   that we have to fulfill.  And we're doing our best under
15   difficult circumstances to fulfill those obligations.
16           THE COURT:  Okay.  I don't need to hear any more on
17   this issue.  This -- I'm going to do this issue by issue so
18   we don't get too confused and leave something out.
19           So the first issue that we're taking up here and it
20   has been fully argued, and the second issue has not been
21   fully argued, okay.  So I'm not -- I didn't want to interrupt
22   you, because you were on a roll, so I thought, Okay, go
23   ahead.  But let me talk about the marking of confidential
24   documents.
25           The protective order that I'm going to enter in
```

In Re: Motion for Protective Order

**Motion Hearing**
**November 14, 2016**

Page 55

```
 1   this case will allow the Pacer Group to mark as
 2   "Confidential" any document that they produce that they think
 3   deserves a confidentiality marking.  Okay, that's up to you.
 4   Under the case law that we normally cite here in Colorado,
 5   what it means is I'm relying on the attorneys' good faith in
 6   designating the documents that you believe legally should be
 7   confidential.  I don't care what your client thinks.  I mean,
 8   I care a little bit, but I don't care very much what your
 9   clients think.  I care what you think legally is a
10   confidential document.
11          You do your job, mark what you want that you're
12   going to produce, and it will be treated accordingly under
13   the Protective Order.
14          I am not going to let you mark other people's
15   documents because they are what they are.  Whatever the NBA
16   has produced, whatever the accountants have produced, they
17   have protective orders.  So does Mrs. Simon.  I don't know,
18   because I don't get all the discovery obviously, what they
19   produced or what they marked, except what has been
20   represented to me, but they have already done what they're
21   going to do.
22          What I am going to say, though, to anyone who is
23   the recipient of the confidential documents, which would
24   include, I think in this case, the IRS and Mrs. Simon, is
25   that if a document is a duplicate of something, okay -- I'm
```

In Re: Motion for Protective Order

**Motion Hearing**
November 14, 2016

Page 56

 1   talking about you got one document and it's from -- you got

 2   it from the Pacer Group, you got it from NBA, you got it from

 3   the accountants.  And two of the people marked it

 4   "Confidential" and one didn't, or one marked it

 5   "Confidential" and two didn't, if anybody marked that

 6   document as "Confidential" in their own production, then you

 7   should treat it as confidential under the local rules.

 8           Now, marking a document "Confidential" doesn't make

 9   it confidential and it does not make it -- it doesn't give it

10   a magic ability to be filed under restriction permanently.

11   But in this Court what that means to me -- and I'll be the

12   one probably deciding this if it comes to that -- is that a

13   document needs to be -- if you want to use it and it has been

14   marked "Confidential" and it's the same document -- I'm not

15   talking about similar, I'm talking about the same -- it's the

16   same document -- it's a copy of that agreement, right, that

17   you should file it, you should let everybody know whoever

18   marked it "Confidential" under your agreement.  You have an

19   agreement.  You let them know, we're going to use this

20   document.  Give them your ten days, We're going to use this.

21           You, then, holder of the protective document, have

22   to file it under restriction, but you do not file a motion

23   with it, right.  You don't file a Motion to Restrict.  You

24   just file it under Restriction so that the public doesn't get

25   it prematurely.

In Re: Motion for Protective Order

**Motion Hearing**
**November 14, 2016**

Page 57

```
 1              Then whoever marked it is going to be notified
 2   under the order that it's going to be used so they can go and
 3   they can intervene, they can just go on Pacer, they can see
 4   it, whatever they want to do.  And then you have to do
 5   something about it.  If you marked it "Confidential," then
 6   somebody needs to file a motion and come into Court and argue
 7   why it should be following our local rules about what gets
 8   restricted.
 9              And keep in mind that our Chief Judge and Judge
10   Blackburn who, you know, they came on about the same time,
11   both of those people are going to hold you very tightly to
12   the Rules of Restriction, because they don't like to restrict
13   documents.  So if it -- if it meets all the parameters,
14   though, and you have to make sure that showing for every
15   single document.  So if there is only 15, that's fine.  If
16   there is 500, that's going to be quite a lot, but the person
17   who marked it has to make a showing of why it should be kept
18   confidential.
19              And one of those things is:  How confidential is it
20   really?  Has it been bandied about all over the place?  Maybe
21   you didn't want it to be, but it has, nonetheless.  I don't
22   know, probably isn't going to be restricted, but I think
23   that's the way the fairest way to handle this order, okay.
24              So the order, as far as it goes, is going to read
25   just like the NBA's and just like the one against -- with the
```

In Re: Motion for Protective Order

**Motion Hearing**
November 14, 2016

Page 58

```
 1   accountants as far as Section 5, et cetera, goes, but I am
 2   going to specifically tell the IRS that I believe that that
 3   is your duty, under the rules of this Court.  So, therefore,
 4   you're obligated do that.
 5            Now, that said, a lot of people file redacted
 6   documents and then file an unredacted document with the
 7   Court.  If you file a redacted document, right, all the
 8   confidential stuff is out of it, then you don't need to file
 9   it under seal, because it's redacted.  It's only if you want
10   the Court to see something that someone else has marked
11   "Confidential."
12            And I think allowing that procedure to go forward
13   with respect to documents that anybody has produced protects
14   everybody, all right.  So if there is something in there,
15   somebody is going to get notice.
16            If I was the Government, I would probably give
17   everybody notice just because it would be easier and faster,
18   but I'm not making it that, because your agreements with each
19   person are different and what you've said to them, perhaps,
20   privately is different, I don't know.  So -- but you do have
21   to follow that rule here because I think that protects
22   everyone.
23            You don't get in trouble for filing something
24   unrestricted that should have been restricted and nobody is
25   disadvantaged.  You all have the right to check the docket
```

In Re: Motion for Protective Order

**Motion Hearing**
**November 14, 2016**

Page 59

```
 1   whenever you want, look on Pacer and see what's filed, but
 2   you're going to get notice if it's your document.
 3              Is that clear?
 4              MR. WEAVER:  Yes, Your Honor.  Can I briefly ask a
 5   few clarifying questions?
 6              THE COURT:  Yes.
 7              MR. WEAVER:  So first off, Your Honor, if I
 8   understand correctly, that would mean you would be amenable
 9   to entering an order like, I think it's Government Exhibit
10   AAA, the last thing that I proposed --
11              THE COURT:  Yes.
12              MR. WEAVER:  -- which resolves the issue about
13   referral from (inaudible) violations or potential violations.
14              THE COURT:  We're not talking about that yet, okay.
15              MR. WEAVER:  Okay.
16              THE COURT:  Right now, my order goes to the
17   provision of the Protective Order where Pacer Group wanted to
18   be able to look at other people's documents and mark them
19   "Confidential."  That -- the answer to that is no, but
20   setting up this procedure I think protects the interest.
21              MR. WEAVER:  All right.  Your Honor, and believe
22   me, we have done our best to be fairly circumspect.  That
23   said, here is my issue with that.
24              With the NBA -- well, let me start by saying there
25   is no protective order in this case with Bren Simon.
```

In Re: Motion for Protective Order

```
 1                THE COURT:  Okay.
 2                MR. WEAVER:  So, you know, there is none.
 3                With respect to the NBA and KSM, both of them took
 4    a very relaxed approach, and I was okay with it, just they
 5    like it marked everything confidential.  And I knew that an
 6    awful lot of what they had produced, Mrs. Simon had already
 7    given me anyway, and I could use that as I saw fit.
 8                Now, the problem I have with this is if -- if the
 9    Pacers Group is going to have to itemize and provide a short
10    explanation to us for every single document that they
11    designate "Confidential" in a reasonable manner, then I'm
12    confident it won't be thousands and thousands of documents.
13                THE COURT:  Well, why do you think they would have
14    to do that?
15                MR. WEAVER:  Well, because -- they're supposed to
16    have the burden of designating a document as "Confidential"
17    by making some sort of good cause showing.
18                THE COURT:  Right.
19                MR. WEAVER:  And if they just blanket designate
20    documents as "Confidential," including ones that Mrs. Simon
21    has not designated as "Confidential," then I'm in this
22    position where the estate produced 40-some thousand
23    documents.
24                THE COURT:  Well, they're not going to get access
25    to that and they're not going to be able to mark those
```

 1   documents "Confidential."  The only thing they can mark is

 2   documents that they are going to Bates-stamp and label and

 3   give to you in response to discovery request you made on them

 4   and their good faith, as lawyers before this Court, is what

 5   I'm going to rely on.  And I'm not going to make them do

 6   anything else that I wouldn't make anyone else do.  That's

 7   what we require of all litigants.

 8           I give everybody the same speech that I just gave.

 9   You should mark what you really think is confidential.  If

10   you can't make the showing that to this Court later that that

11   document should be filed under restriction, you shouldn't be

12   filing it "Confidential."  You better, in your own hearts,

13   believe you can make that showing.  That's the thing.  But

14   I'm not going to tell you what you can and can't do.  I don't

15   know whether you can or not, but you may have -- you may have

16   to come up with it, right, at some point.  But, you know, the

17   fact that you're letting them be so general and mark

18   everything, that -- I can't control that.  That's something

19   that you --

20           MR. WEAVER:  Well, we may have to challenge.

21           THE COURT:  Right, you may have to.

22           MR. WEAVER:  But the problem I see is, now, let's

23   say we have five versions of this very same document.  And

24   first, I'm understanding that if there are two almost

25   similar, but not quite similar documents, they're not the

 1   same, we don't have to worry about it.  They may have the

 2   same information, but they're different documents, we don't

 3   have to worry about it.  But let's say there are five

 4   identical documents, except for Bates numbers.  That means we

 5   now -- we have already indexed and know a good deal about

 6   Mrs. Simon's collection because it has been around the

 7   longest.  So now we are going to have to go find -- and,

 8   hopefully, our electronic searching will allow us to do this,

 9   but it's not perfect.  We're going to have to go find and

10   test against all these other folks who are producing

11   documents to see one of them marked it "Confidential."

12           Now, I've tried to do that, but I think it would

13   only be fair for the Pacers Group to do a cross-index.  Why

14   should we have to bear the burden of doing a cross-index?

15           THE COURT:  Well, because I'm not -- I'm not

16   allowing them to cross-designate anything.  You know, I'm not

17   allowing them to say that anyone else's documents are

18   confidential.  It's only their own.

19           Well, you're describing your own differently than I

20   am.  It's only the documents that you are producing.  The

21   Pacers Group is actually going to physically produce and mark

22   with their numbers, however they do it.  Those are the

23   documents that they may designate confidential if they can

24   make the showing under the Rules of Restriction, right.  And

25   so I'm leaving that up to the attorneys to say yes or no on

In Re: Motion for Protective Order

```
 1   that.

 2           But -- and that's why I put it on the attorneys,

 3   instead of the litigant themselves, because a business often

 4   says, I don't want to do it.  This is my stuff, I shouldn't

 5   do it.  But you know, looking at it as a lawyer, that you

 6   could never make a showing.  You could never meet the

 7   requirements to file it under restriction.  And so you would

 8   have to tell them, you know, It just doesn't matter, I

 9   couldn't make that showing if the Court asks, so I couldn't

10   designate it.  So that's what I'm expecting of the lawyers.

11           Now, that doesn't mean everybody will do that.  I

12   hope they will, though, because I think I'm giving some

13   pretty good guidance here, but they only to get to designate

14   their own.  So if you -- yes, you are going to have to look

15   for those key documents that you really believe you need to

16   put in a Motion for Summary Judgment, which, you know, you

17   probably don't want to put hundreds and hundreds anyway,

18   because the more of them you put in the Motion for Summary

19   Judgment, the less likely it is a judge will ever look at

20   them, right.

21           You put a few, we'll read them.  But you put

22   hundreds, no, we're not going to.  So -- well, I should only

23   say for myself.  I don't think anyone else has time to do

24   that but I will say for myself, the more you put, the less

25   likely it is you're really get read.
```

Page 64

```
 1              So you're going to pick out your most important

 2   ones that really say what you want.  And, yes, you are going

 3   to have to go see if somebody designated them, which I think

 4   you would anyway under the -- under the protective orders

 5   that you have got with everybody.  I think you would have to

 6   do that.

 7              MR. WEAVER:  Well, we certainly have been trying --

 8              THE COURT:  Yeah.

 9              MR. WEAVER:  -- but there is no obligation that

10   obligates us to do that at this point, except you're

11   indicating we will have that obligation going forward.

12              That said, we've already given our experts

13   documents.  They have the complete Bren Simon collection, so

14   they already have that.

15              THE COURT:  Right, that's fine.

16              MR. WEAVER:  Okay.

17              THE COURT:  I mean, there is nothing -- I'm not

18   allowing the Pacers to do anything about anybody else's

19   documents.  It's only theirs.  It's only the ones they're

20   going to produce that they can mark "Confidential."

21              MR. WEAVER:  Fair enough.

22              THE COURT:  Right.  It does put some burden on the

23   Government.  I understand the IRS isn't kind of used to doing

24   this.  They usually just get the documents they want, people

25   have to give it to them, but this is structured a little
```

In Re: Motion for Protective Order

**Motion Hearing**
**November 14, 2016**

Page 65

 1   differently.  It is a unique case and I think it deserves

 2   some unique treatment.  It, at least, deserves personalized

 3   treatment because of the -- what is it -- what would you say

 4   sensationalism, maybe, of people finding out all about the

 5   finances ever a major league basketball team.  Even I was

 6   interested, right, in things.  So -- and I'm not really a

 7   basketball fan, so I guess that's good and bad for all of

 8   you.

 9          But you know, I understand the problems and the

10   issues, but I'm not going to give them something that no one

11   else would be entitled to.  I'm also not going to put a

12   burden on any of the parties to this case that they wouldn't

13   otherwise have, but you're going to have to look to make sure

14   that none of these documents are in -- covered by your

15   protective orders anyway, because you have an obligation to

16   tell the party that gave it to you.

17          So that's all I'm saying, is that if you have that

18   obligation, you have it.  You must comply with it.  I'm going

19   to put the same one in the protective here with the Pacers

20   Group that you've already agreed to with these other two, at

21   least those two entities.  And I'm just telling you that I

22   believe now, and I'm going to order you, actually, to comply

23   with the local rule that says that if you want to use any of

24   these documents that are covered by a protective order, you

25   must follow that local rule that I told you about, and then

```
 1   everybody has 14 days after that to file something.
 2            MR. WEAVER:  All right.  Well, Your Honor, in
 3   fairness, then, I think I do need to point out -- and I don't
 4   have it up here with me, I just brought my notepad up -- but
 5   there is a provision, I believe, in the form agreement that
 6   addresses, if there is a document that has come from
 7   somewhere else and a party has obtained it independently,
 8   then the "Confidential" designation in that particular
 9   protective order does not apply --
10            So that is provision in the proposed order that is
11   at variance with what I hear you say.
12            THE COURT:  You know, and I think I know exactly
13   what you're saying, and I agree.  It might not apply in that
14   protective order, but it's going to apply in the other
15   protective order, right.
16            If it doesn't -- if it doesn't apply in KSM's, for
17   instance it, might apply in BA's.  If it doesn't apply in
18   NBA's, it might apply in the Pacers Group, because they
19   marked it; but if somebody marked it, and that's all I'm
20   saying, somebody marked it under their own order as
21   "Confidential," then you need to obviously comply with
22   confidentiality order and then you need to follow the local
23   rules about filing something.  That's really all I'm talking
24   about.
25            I think the rules, in general, prohibit any party
```

```
 1   to litigation that receives documents in discovery from
 2   disseminating them in ways that are not case-related.  So no
 3   one better be sending it to the press.  And that's one of the
 4   reasons why things are Bates-stamped, they know where it came
 5   from if a press person gets ahold of it.
 6            MR. WEAVER:  Yes, Your Honor.  I hear what you're
 7   saying and it will be, I guess, in this next order.  It will
 8   require a little drafting.  My recollection is that there is
 9   a paragraph in the draft orders and the orders that have been
10   entered in the case, so if a document was, let's say, in the
11   public domain, it's not protected, period.  Likewise, if it
12   has been giving given to us in a nonprotective fashion by
13   some other party, at this point, you know, at least the NBA
14   and KSM protective orders, it's not protected.
15            THE COURT:  Okay, but it may be.  What I'm
16   saying -- I'm telling you, under this order that I'm giving
17   you today, that document may become protected if the Pacer
18   Group produces the same document and it's protected in their
19   protective order.
20            MR. WEAVER:  Okay.
21            THE COURT:  And, to me, that's just fair, and it
22   helps everybody to cut down on some of the paperwork, right.
23   You can get what you need, but just use what you need.  You
24   know, you get thousands of pages and maybe a lot of them are
25   protected, but at least you get them and see what you really
```

Page 68

```
 1   need to use.  It's not just so you can't use it, because I
 2   think you probably can.  I think very little will ever be
 3   protected at trial, so . . .
 4             MR. WEAVER:  Yes.  This may -- we may have to
 5   reevaluate whether we immediately challenge some documents,
 6   as opposed to just saying, We'll deal with it later.
 7             THE COURT:  Right.
 8             MR. WEAVER:  So that may be the practical effect.
 9             THE COURT:  Right.
10             MR. WEAVER:  Should I move forward to the referral.
11             THE COURT:  Mr. Porter, do you have anything you
12   want to add on that?
13             MR. PORTER:  I don't, Your Honor.
14             THE COURT:  Okay.  Clear to the Pacer group?
15             MR. KELLEY:  One quick question, Your Honor.
16             As a practical matter, should we intervene now or
17   should we wait until we're notified?  We'll do whatever the
18   Court wants us to do, but . . .
19             THE COURT:  I don't know that you necessarily need
20   to intervene.  I -- you know, I haven't really researched
21   that.  I have to leave that up to you --
22             MR. KELLEY:  Okay.
23             THE COURT:  -- and when.  But if you've designated
24   something as "Confidential" in your documents, it's going to
25   be -- you're going to get the notification so you'll know.
```

 1          MR. KELLEY:  Okay.

 2          THE COURT:  Now, what you won't know necessarily is

 3   whether anyone else has designated it.  Maybe they have,

 4   maybe they haven't.  I don't know.  You know, I won't know

 5   either until probably the motion is filed, maybe not even

 6   then.  But to each his own.  You know, you're going to be

 7   fighting your battle.  It's unlikely that you would be

 8   allowed to fight the battle for KSM, for instance.  If you

 9   don't designate it, you know, as "Confidential," because if

10   it's only confidential under their agreement, someone from

11   there has to then raise the issue.  And if they don't, they

12   don't, and then it becomes part of the public domain.

13          MR. KELLEY:  Certainly.  Okay, that was the only

14   question I had about the order.

15          How will we proceed from here?

16          THE COURT:  So you've made your argument on the

17   next -- the opening argument, at least, on the next part,

18   which is the reporting of the criminal activity, which I

19   thought was pretty narrowly drawn.  So maybe you should

20   address that for me for the IRS.  I mean, that -- it seems

21   like a pretty narrow provision, but maybe I'm wrong.  It

22   doesn't bother me that "tribal" in is there because that is

23   kind of a government federal law enforcement agency or could

24   be.  I can't imagine it would be particularly germane to this

25   case.  We're not talking about malls, right.  We're talking

 1    about gift tax.

 2            MR. WEAVER:  So, Your Honor, I will turn to that

 3    now.  Just one further clarification, though.

 4            If I have a document that the Pacers Group does not

 5    produce to me, then I think what I hear you're saying is, Too

 6    bad, it's not like they're -- they can reach out and

 7    designate it.  If they didn't produce it to me as

 8    "Confidential," then it's up to whomever produced it to me to

 9    take care of that.

10            THE COURT:  Absolutely.

11            MR. WEAVER:  Okay.

12            THE COURT:  Yes.  They only get to challenge or

13    move to restrict their own documents.  And I'm not sure that

14    takes intervention; but if you want to be sure, of course,

15    that's probably what you should do, but you should look at

16    that and see.

17            MR. KELLEY:  Thank you.

18            MR. WEAVER:  All right.  Turning, Your Honor, to

19    the issue of referral.

20            Unlike other areas maybe, agencies and the Federal

21    Government, the Department of Justice and the IRS have a

22    specific statutory duty to refer violations of law to the

23    proper authorities.  We've cited the statute in our moving

24    papers, and we strongly want to be able to do that in an

25    unfettered way.  The way that the Government normally

```
 1   conducts investigations is not to run in and notify someone
 2   that you may be under investigation.
 3           Is there a great likelihood here that someone is
 4   going to be under investigation?  Before it was such a big
 5   deal here, I didn't think so.  This doesn't seem like that
 6   kind of case.  We're dealing with folks who were, you know,
 7   some of the most sizable mall businessmen in the country.
 8           As a matter of fact, in the initial correspondence
 9   between me and Mr. Kelly, I believe -- if I've got my exhibit
10   number correct in what is now 1-14, I think we marked it as,
11   if I have it right, Exhibit W -- the first time I was
12   corresponding with Mr. Kelley, Mr. Kelley didn't even have a
13   concern about this provision.  And it was only later as we
14   began to make headway in some of the other disagreements,
15   that we were having that this one surfaced.
16           The proposed language that we are seeking in
17   paragraph 14 is not broad.  It says that where counsel --
18   that would be me and my colleagues or the IRS -- the IRS
19   counsel assigned to the case -- believe either on the face or
20   in conjunction with other information, a violation or
21   potential violation of law has occurred, then we have the
22   right to refer it over.
23           What we don't want to do is to have our hands tied
24   and have to notify folks who may be under investigation that
25   they're under investigation.  That's counterproductive.  And
```

In Re: Motion for Protective Order

**Motion Hearing**
November 14, 2016

Page 72

```
 1   we don't believe that it would be advisable or particularly

 2   useful for the Court become involved as well.

 3              We have cited to several cases, the Bear (phonetic)

 4   case, the Elshauf (phonetic) case, both which are tax

 5   division cases.  There's not a lot of case law out there.

 6   The Education Management Case is a massive fraud case of some

 7   sort in the -- I think it was in the Western District of

 8   Pennsylvania, a different setting.  And we did refer the

 9   Court to a docket entry that the Government filed in that

10   case that had scores and scores of protective orders that

11   have been routinely entered, usually by consent of the

12   parties, where referral provisions similar to the one we're

13   seeking here were entered by the Court.

14              So the burden is on someone who wants a protective

15   order to explain why they need one.  I really haven't heard

16   any explanation from the Pacers as to why it would be so

17   damaging for the United States Government to go about its

18   normal business.

19              There is another piece, I believe, that the Pacers

20   have sought to delete from this agreement.  I believe their

21   markup is in 1-7.  So in addition to deleting what they've

22   marked as Exhibit -- paragraph 15.  I know it's confusing --

23   they also deleted paragraph 8I and draft 1-7, 1-7, enabling

24   employees of Department of Justice and the IRS assigned to

25   any criminal investigation to have unrestricted use for the
```

In Re: Motion for Protective Order

**Motion Hearing**
November 14, 2016

Page 73

```
 1   materials.
 2          So in the absence of any good reason, I don't know
 3   why the Court would want to inject the judiciary into an
 4   executive branch function.  We are under strict obligation,
 5   not just ethical duty, but statutory obligation, to refer
 6   potential violations of law in the tax area to the proper
 7   authorities.  And it should not be the case that the Pacers
 8   get some sort of special advance notice were the situation to
 9   arise.
10          THE COURT:  All right, thank you.
11          Mr. Porter, do you have a dog in this race?
12          MR. PORTER:  No, I do not, Your Honor.
13          THE COURT:  Okay.  You know, that's kind of my
14   concern, too, Mr. Kelley.  So if you want to in your rebuttal
15   here -- you know, it kind of came at the very, very end
16   there, but I'm a little bit leery of separation-of-powers
17   issues.
18          Courts have a lot of overlapping power with the
19   other branches of the government, but we don't really have
20   the right to ever -- I don't think, although I think courts
21   sometimes take it anyway, but I'll tell you I'm not going
22   to -- take the right of the executive to investigate and
23   bring charges.  We -- we just don't do that.  We shouldn't do
24   that.
25          We resolve it sometimes in criminal cases -- well,
```

In Re: Motion for Protective Order

**Motion Hearing**
**November 14, 2016**

Page 74

 1  often in criminal cases it's resolved by the courts, but it's

 2  not ever brought by the court.  Like I would not probably

 3  refer anything to the FBI, except maybe contempt or

 4  something, but not a crime.  You know, it's just not done.

 5          And then on top of that, you have the IRS, which is

 6  still under Treasury, right, Department of Treasury --

 7          MR. WEAVER:  Yes, Your Honor.

 8          THE COURT:  -- whole different department from the

 9  Department of Justice.  It prosecutes other crimes.  And I've

10  seen this come up a few times before, but it's usually the

11  IRS that they're afraid of, that people are afraid of; that

12  DOJ is somehow going to report to IRS.

13          But in this case, I think the likelihood of this

14  coming up and really being an issue seems slim to me, but

15  it's your clients, right, so I don't know.  But I just don't

16  think that the Court should interfere with the obligation of

17  the IRS.

18          If you give them a document and it's protected for

19  all purposes in our civil case, I don't think you can give

20  them a document that says, Oh, by the way, I murdered Mel to

21  get his money, right.  I don't think you can give that to

22  them and have them say, Well, it's under protective order,

23  you know, and I guess we're not to give it, or give it to the

24  Court and see what they say.  Well, that puts me in a bad

25  position, right, that I -- do I tell or do I say, Well, it's

 1   under protective and it's my order, you know.

 2           And I think that's why it's there.  So I can't see

 3   not -- you know, even subjecting them to that.  I think

 4   that's completely outside the realm of this case and this

 5   Court or the District Court, you know, anybody in this

 6   building, to tell the IRS that they can't report evidence of

 7   a crime if they believe it is evidence of a crime to another

 8   part of the Government.

 9           MR. KELLEY:  I agree with that statement

10   wholeheartedly, and we're not trying to prevent the IRS from

11   doing that.  What we want is that for a nonparty who is

12   producing documents to a lawsuit where there is not a whiff

13   of any sort of wrongdoing to have the protection of knowing

14   that the documents that it produces will not be forwarded on

15   at counsel's sole discretion, unless there is some sort of

16   showing made to the Court that the provisions requiring

17   disclosure -- I think Mr. Weaver cited three statutory and

18   regulatory provisions which would -- I don't disagree, would

19   require a Government employee to make that showing.  But

20   we're talking about information that they don't have and that

21   they would not have, but for dragging a nonparty into, again,

22   a run of the mill, no wrongdoing even implied, civil action.

23   And we think that it's appropriate to have the Pacers Group

24   know that the materials that they produce will be protected

25   in that manner.

In Re: Motion for Protective Order

**Motion Hearing**
**November 14, 2016**

Page 76

```
 1              I completely agree that the likelihood of anything
 2   happening is zero or, you know, infinitesimal, but the point
 3   is that if we're going to be producing documents, those
 4   documents -- and those documents will be subject to a
 5   protective order, they ought to be subject to a protective
 6   order and not allowed to be forwarded outside to people who
 7   are not subject to that order.
 8              THE COURT:  Okay.  So I think that you can of
 9   you -- you don't have to stand there if you don't want to.
10   On this issue, I think it's pretty clear that the Court's
11   answer to the Pacer Group is, no.  I'm not going to impinge
12   on the, not ability but the obligation of the IRS to make
13   that kind of call.  They do not have to explain to a court,
14   including this one, why they think something is criminal or
15   whether or not it comes under statute.  That is something
16   they have to do.  It's in their discretion.
17              And I understand that it's kind of scary, maybe,
18   for people, but the thing is that's -- they have the right to
19   do that.  That's what they are there for.  Not -- and the
20   Court doesn't supervise those decisions.  We supervise it
21   later if they charge someone wrongfully.
22              We may -- you know, that may even be a civil case
23   where we do it, but we're not going to do it ahead of time.
24   And so I'm not going to do it under the auspices of a
25   protective order; but what I am going to say is that the IRS
```

In Re: Motion for Protective Order

 1   I hope, and I assume, will take that obligation seriously.

 2          I've never seen an employee of DOJ, who I know very

 3   many having worked with the DOJ myself for 20 years, that

 4   would ever do something improper on purpose like that.  Now

 5   other things, maybe.  But not disclosing what they think is

 6   evidence of a crime just to get even or get it out in the

 7   press or something like that.  I mean, I just can't imagine

 8   any motivation to do that, frankly, you know, but people are

 9   motivated by different things.  But I will say that I think

10   they have a right and obligation to exercise their power

11   judiciously, but not in the judicial branch.  So I'm not

12   going to allow you to do that.

13          One thing I do want to point out, however is that

14   no protective order and no order of this Court is -- should

15   ever be interpreted to try to take from anyone in the Pacers

16   Group their Fifth Amendment right if they feel they have one.

17   So that's where your protection really is, I think, is in the

18   Fifth Amendment.  And so if you have a Fifth Amendment issue

19   you should raise it, but not -- it's not a protective order

20   issue, it's a different thing.  All right, so that being on

21   the record I think that resolves that part.

22          Okay, now on the protective order -- I think we

23   still need to talk about, because there is kind of an

24   overlapping thing, the attorney/client -- or excuse me, the

25   accountant/client privilege that exists in Indiana and

Page 78

```
 1   whether or not that has anything do with the protective order
 2   or just the Motion to Compel.  I think that's something we
 3   should talk about.  Is that a good place to go next for
 4   everybody?
 5            MR. PORTER:  Sure.
 6            THE COURT:  Okay, let's take a short break for
 7   those who need it.  I would like to take only about ten
 8   minutes, if that's okay, be back about 3:30.
 9            I've got to warn all of you that I cannot stay past
10   5.  I have a child that's in the hospital.  It's okay, he's
11   not going to die so I won't put that on you, but I do need to
12   get out of here and get over there.  So it's a grownup person
13   that's still -- so I've got to get out of here at 5.  So if
14   there is something that you think is more important that's
15   going to take longer, use this time to think about what that
16   is and we'll change gears and get to the more important
17   thing, okay.
18            All right, Court will be in recess.
19            (Recess was taken.)
20            THE COURT:  Please be seated, everyone.  We're back
21   in session in Case No. 16MC191.  All counsel are here, so did
22   we have any consensus on what might be the most important
23   topics to go forward with?
24            MR. PORTER:  Your Honor, I -- we conferred and I
25   think it's fair to say that Mr. Kelley and I don't anticipate
```

In Re: Motion for Protective Order

**Motion Hearing**
**November 14, 2016**

Page 103

```
 1              MR. KELLEY:  -- if that.  It will be very quick.

 2              THE COURT:  Let's get to the protective order to

 3   the Court on email by close of business on the 21st, and I

 4   will sign it within a day or two, as long as both of you

 5   agree that that's what I ordered, you know; there is no

 6   argument about that.

 7              If there is a provision that you disagree about,

 8   alert me in the email, okay, and say, I've put it in red-line

 9   version.  The Pacers Group think you said this and IRS thinks

10   you said this, right.  So put it in there.  I'm going to make

11   a decision, right, and I'm going to fix the order and enter

12   it.  So I'll enter it by, say, the 22nd or 23rd.  So let's

13   say the production of documents, at least round one

14   documents, the 28th.  Okay, we are talking about Thanksgiving

15   week or so.

16              MR. KELLEY:  Yeah.  The only caveat that I will

17   point out is that Your Honor made very clear is that as we

18   make our confidentiality designations, we need to be thinking

19   ahead to being able -- to defend them.

20              THE COURT:  Right.

21              MR. KELLEY:  So we might be a little overbroad, but

22   we can -- you know, when the documents are identified, we can

23   draw that back if need be.

24              THE COURT:  Okay.  Try not to be overbroad.

25              MR. KELLEY:  We will --
```

```
 1              THE COURT:  I don't want you to be overbroad.

 2              MR. KELLEY:  -- try not to be overbroad.

 3              THE COURT:  Okay.  So get those documents.  Now,

 4   we're going to need to talk about another -- so you should

 5   have documents by the 28th, okay, at least in part.

 6              I think some of your limitations here are way too

 7   limiting and what I have told you is you need to comply with

 8   the request.  I'm not allowing you to decide what complies.

 9   These obviously comply, but that may not be all.  So you need

10   to rethink that and look back and see, because some of these

11   things that ask for communications seem like these documents

12   don't really do that; that they're -- that's part of what

13   they want, but they want email, they want letters, they want

14   stuff like that that you may not have collected.

15              So I think maybe sometime into December might be

16   realistic for a part two of things that you've gone back

17   through and said, Okay, these do -- these do comply and we're

18   going to produce this, but we don't have it gathered up yet

19   because that wasn't what we were thinking.

20              So how about December -- let's say, December 16 for

21   a second round of production, if any.  I'm not telling you

22   you have to yet, but I think there is more that you should

23   produce under these.

24              MR. KELLEY:  Okay.

25              THE COURT:  So let's have that be that date.  So
```

Page 105

```
 1   that we have a clear -- what I'm looking for is a clear time
 2   where the IRS and Mrs. Simon can say -- and the Motion to
 3   Compel is really only brought at this point by IRS, but where
 4   the two groups can say, Okay, this is what they've given us
 5   in their interpretation of what we asked for and what's not
 6   privileged and that we would have to produce.  They know that
 7   this is it d they know then what to file another motion on if
 8   they have to.
 9           Now, the reason I say this is because I can't move
10   your dates because Judge Blackburn has a trial date set.  So
11   in order to move your discovery dates, which I think -- I
12   think is appropriate in this case.  You clearly need more
13   time -- I can't do it unless he moves a trial date and
14   somebody files a motion.
15           What I can do is take a motion, especially a joint
16   motion, that proposes new dates; grant the motion upon
17   recommendation to the district court that he move the trial
18   date, if that's what you want to do.  I mean, I don't know if
19   that's what everybody wants to do.  I mean, I don't know that
20   you guys actually have any horse in that race, right.
21           MR. KELLEY:  Whatever other metaphors we can come
22   up with, no.
23           THE COURT:  Yeah, we'll come up -- I've got dogs,
24   horses.  Surely we've got to have something else, but -- so,
25   yeah, to the extent that the parties want to move those
```

```
 1   dates, you know, we need to ask Judge Blackburn to do it.  I
 2   can't do it on my own because of his trial date is what I'm
 3   saying.
 4            MR. WEAVER:  Well, Your Honor, given the schedule
 5   that you're proposing, I don't see how we could probably
 6   finish up, even looking at the documents, virtually before
 7   the discovery deadline.  I don't know how Mr. Potter feels
 8   about that, but --
 9            THE COURT:  Well, I don't either.
10            MR. WEAVER:  We would greatly appreciate it if we
11   did submit a joint motion to you in a recommendation or
12   whatever, and I would -- I don't know about Mr. Porter.
13            MR. PORTER:  I would want to consult with my client
14   first, Your Honor, but I don't see an issue there.
15            THE COURT:  Okay.  That's what I would suggest that
16   you do, is file a joint proposed motion to continue.  In
17   other words, set out the deadlines that you think need to be
18   moved and then talk about how much time everybody needs.  And
19   what I would do, if I agreed with you -- which I agree with
20   you now you need some more time -- is do an order contingent
21   upon Judge Blackburn accepting my recommendation to move his
22   trial date and then tell me when you think the trial should
23   be.
24            I'm not telling you in any way, shape or form that
25   you will get the trial date.  But like, if you think the
```

 1   trial date really should be in December of next year, say

 2   that.  And if you think it shouldn't be before December of

 3   next year, for instance.  And we'll see what he does with it,

 4   but he usually accepts a recommendation to move the trial

 5   date, but he wants some real good reason and grounds, which I

 6   actually think you have in this case.

 7           So I would be supportive of that.  And I'll call

 8   him if I have to, you know, tell him what we're doing, but,

 9   you know, I would like -- I would like to have a motion on

10   file because of the public record, you know, that you've

11   moved for it, I'll recommend it, and then Judge Blackburn can

12   do it or not do it.  And he probably will.  Okay.

13           MR. KELLEY:  Okay.  As a preliminary matter, it's

14   not a problem at all to get the documents that we have listed

15   produced by the 28th and similar documents produced by the

16   16th of December, but we don't have communications collected.

17   We haven't done that at all, because that's been the major

18   issue of contention between these nonparties and the parties

19   here.

20           And we've gone back and forth, and I think

21   Mr. Weaver has attached as exhibits to his briefing some of

22   our letters he had proposed something, you know, 27

23   custodians and a number of search terms and we had countered

24   with a much more narrow set of searches.  But all of which is

25   to say that we're not going to be in a position to produce --

Page 146

```
 1            THE COURT:  All right, we'll be in recess.

 2            (Whereupon, the within hearing was then in

 3    conclusion at 5:10 p.m.)

 4            I certify that the foregoing is a correct

 5    transcript, to the best of my knowledge and belief,

 6    pursuant to the quality of the recording) from the record of

 7    proceedings in the above-entitled matter.

 8

 9    /s/ Dyann Patterson                  11/18/2016

10    Signature of Transcriber            Date

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```