IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 15–cv–00538–REB–KMT

BREN SIMON,

      Plaintiff,

v.

THE UNITED STATES OF AMERICA,

      Defendant.

Civil Action No. 16–mc–00191–KMT

In Re:  MOTION FOR PROTECTIVE ORDER

# ORDER

This matter is before the court on the "United States' Motion to Compel Production of Documents" [Doc. No. 1-21][1] and several related discovery matters that were transferred to this court by Judge William T. Lawrence from the Southern District of Indiana, Indianapolis Division on August 18, 2016.  In the Indiana case, the United States of America ("I.R.S.") moved for an order compelling Herbert Simon, Stephen Simon, Kevin Bower, Donald Walsh, Pacers Basketball, LLC, and Faegre Baker Daniels, LLP (which represents these individuals and entities) (collectively "the Pacers Group") to produce documents responsive to subpoenas issued to them by the I.R.S. in *Bren Simon v. United States*, No. 1:15–cv–00538–REB–KMT in this

---

[1] All references to documents herein are to documents in the 16–mc–00191 case unless otherwise noted.

Court.  After receiving briefing on this motion and on a Motion for Protective Order filed by the

Pacers Group [Doc. No. 2], Judge Lawrence transferred the matter to Colorado pursuant to Fed.

R. Civ. P. 45(f).

This court received a Statement of Open Issues [Doc. No. 17] on November 10, 2016 and

set a motions hearing for November 14, 2016.  The Pacers Group and the I.R.S. filed

supplements to the briefing on the Motion to Compel on November 28, 2016.  [*See* Doc Nos. 21

and 22, respectively.]  Pursuant to this court's Order, the parties and the Pacers Group filed

status reports outlining the issues still needing attention from the court on March 1, 2017.  [Doc.

No. 25, Pacers Group's Status Report ("Pacers SR"); Doc. No. 26, Status Report of the United

States ("US SR"); and Doc. No. 27, Bren Simon's Status Report Regarding Discovery.]

The Pacers Group reported that the issues still needing court resolution are: 1)

responsibility for payment of costs associated with the Pacers Group email document production,

and; 2) whether the Pacers Group should be required to produce documents from Melvin

Simon's probate litigation, given that Bren Simon is a party to that litigation and "many of the

documents are subject to the probate court's protective order."  (Pacers SR at 3.)  The I.R.S.

agrees that the payment of costs for email document production is still an issue between the

parties and noted that the production of Herbert Simon's email communications may result in

further disputes.[2]  (US SR at 1–2.)  The I.R.S. did not list documents from Mel Simon's probate

estate to be an issue still pending court resolution.  Therefore, the court considers this issue to be

moot at this time and the production by the Pacers Group as to this request to be sufficient.  Bren

---

[2] Herbert Simon's emails are maintained on servers belonging to Simon Property Group
("SPG"), of which Mr. Simon is a director.  SPG is not part of the Pacers Group as constituted
herein.  The I.R.S. has subpoenaed SPG for those emails.  (Pacers SR at 2.)  Issues relating to the
production of these emails, if any, are not before this court at this time.

Simon reported that there were no remaining issues outstanding concerning her discovery requested from the Pacers Group.

This Order addresses the costs for review and production of 21 email searches undertaken by the Pacers Group in response to subpoena requests from the I.R.S.

It is the Court's obligation to protect any person who is not a party to the underlying lawsuit from significant expense resulting from production pursuant to Rule 45.  Fed. R. Civ. P. 45(c)(2)(B).  The rule is mandatory.  *R.J. Reynolds Tobacco v. Philip Morris, Inc.,* 29 F. App'x 880, 882–83 (3rd Cir. 2002).  The "court must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder 'non-significant.' "  *Linder v. Calero–Portocarrero,* 251 F.3d 178, 182 (D.C. Cir. 2001).  Such protection does not necessarily mean that the requesting party must bear the entire cost of compliance.  *Id.*  The Court, in determining to what extent costs should be shifted, shall consider: (1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear its costs than the requesting party; and (3) whether the litigation is of public importance.  *Id.* (citations omitted).  The cost shifting is not limited to costs of inspection and production, but those "significant expenses resulting from the inspection and copying."  *Crandall v. City & Cnty. of Denver, Colo.,* Case No. 05–cv–00242–MSK–MEH, 2007 WL 162743, at *1 (D. Colo. Jan. 17, 2007) (citing *Klay v. All Defendants,* 425 F. 3d 977, 983–84 (11th Cir. 2005).

While the Pacers Group states that it has spent $42,000.00 on attorney fees in connection with the subpoenas at issue, what amount, if any, is attributable to producing email communications remains unclear.  As the process is described in the Pacer Group's status report, it appears the bulk of expense attributable to production of email communications was spent on

"Pacers IT professionals," not on attorney legal work.  (Pacers SR at 2.)  The Pacers Group states

that from December 2016 to January 2017, its IT professionals spent over 12 hours collecting

more than 482,000 emails from the Pacers Group's servers, and that it then took several more

weeks to process the documents for review.  (*Id.*)  The I.R.S. then narrowed its requests to be run

against the collected emails, resulting in a yield of 3,500 emails and 1,500 attachments. (*Id.*)  The

Pacers Group advised the court that it has run "21 U.S.-proposed searches for electronically

stored information ("ESI") of five custodians (Albrecht, Bower, Fuson, Morris and Walsh) . . . ."

(US SR at 3.)

The United States has offered to pay for review of documents returned by only four of the

twenty-one searches, stating,

> Srch # 2 (as modified and for select custodians): 213 to 772 "hits;" Srch # 9 (five
> custodians) 339 "hits;" Srch # 12 (select custodians): 299 "hits;" Srch # 17 (as
> modified and for select custodians) 1560 "hits." The United States is requesting
> that the Pacers Group bear its own cost of reviewing the following numbers of
> documents returned by seven searches, as follows: Srch # 3 (four custodians) 75
> "hits;" Srch. # 4 (three custodians) 58 "hits;" Srch. # 5 (four custodians) 30 "hits;"
> Srch. # 10 (two custodians) 5 "hits;" Srch. # 13 (one custodian) 4 "hits;" Srch #
> 20 (one custodian) 13 "hits;" and Srch # 21 (four custodians) 25 "hits." (The
> United States is also considering a small subset of 23 hits for Srch # 8.)

(US SR at 3, n.3.)  The Pacers Group argues that the amounts offered by the United States to

reimburse for document review for both relevance and privilege are inadequate, stating "at a rate

of only $186 per hour, instead of the $340 per hour that the review will actually cost, . . . the IRS

expects the non-party Pacers Group to further subsidize its discovery."

　　　　1.　　　The Pacers Group Interest in the Outcome of the Case.

Herbert Simon is alleged by the I.R.S. to be the beneficiary of a substantial gift

from Melvin and Bren Simon.  Herbert and Melvin Simon purchased the Indiana Pacers

basketball team in the 1980s.  (Scheduling Order [Doc. No. 17], Case No. 15–cv–00538–REB–KMT ("Schg.Ord.") at 4.)  The Simon brothers reorganized their holdings in the Pacers during 2009, which resulted in Herbert Simon becoming the primary owner and controller of the Pacers.  Subsequent to Mel Simon's death later in 2009, the Internal Revenue Service determined that the reorganization resulted in a taxable gift under 26 U.S.C. §§ 2501 and 2511–12, which, under 26 U.S.C.§ 2501, resulted in a tax owed on the transfer of property by gift.  Bren Simon was assessed $ 21,372,328.43 of gift tax and interest resulting from this decision.  *Id*.  Bren Simon maintains that the reorganization was made in the ordinary course of business, bona fide, and free of donative intent as those terms are used in 26 C.F.R. § 25.2512-8, and that her former husband, Mel Simon, received adequate and full consideration in money's worth as those terms are used in 26 C.F.R. § 25.2511-1(g)(1).  In addition, Mrs. Simon alleges that there was no lapse of a voting right or liquidation right under 26 U.S.C. § 2704(a).  (*Id*. at 3.)  Mrs. Simon paid the tax assessed by the I.R.S. and thereafter brought this case for refund.

Herbert Simon now controls the Indiana Pacers basketball team.  The events surrounding the reorganization of ownership of the Pacers in 2009 is at the heart of this case and drives all the massive discovery that is being undertaken.  Courts have held that expenses should not be shifted "if the non-party was 'substantially involved in the underlying transaction and could have anticipated that [the transaction would] reasonably spawn some litigation."  *W. Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.*, No. 11–CV–01611–MSK–CBS, 2014 WL 1257762, at *23 (D. Colo. Mar. 27, 2014) (quoting *United States v. Blue Cross Blue Shield of Mich.,* No. 10–CV–14155, 2012 WL 4838987, at *3 (E.D. Mich. Oct. 11, 2012) (holding that when non-

party hospitals entered into agreements with the defendant that included provisions that had an anti-competitive impact on the marketplace, they could have anticipated that the agreements could spawn litigation from the plaintiff or one of defendant's competitors).

Further, there appears to be ongoing litigation between family members Herbert Simon and Bren Simon and others concerning the estate of Mel Simon.  While Herbert Simon and the Pacers Group are not parties to the litigation being undertaken by Bren Simon against the I.R.S. here, these legal issues are intertwined to some extent with the family litigation, which apparently still roils in Indiana.  Therefore, while not a direct beneficiary of any particular outcome of this litigation, Herbert Simon and the companies he now owns and controls, including the one that owns the Indiana Pacers basketball team, are hardly strangers to the litigation.  For instance, the ultimate valuation of the Pacers in 2009—which is necessarily undertaken as part of this case—could conceivably have direct tax ramifications on Herbert Simon for all the years subsequent to the reorganization.

Additionally, the "privileges" for which review is being undertaken belong to Herbert Simon and/or the Indiana Pacers basketball team or one of the Simon entities in ownership of the Indiana Pacers.  Therefore, it is those persons and entities who will benefit from thorough review of the relevant and responsive emails, albeit true that there would be no need for review at all if the documents were not sought as discovery in this case by the I.R.S.  Nonetheless, the documents requested appear to be relevant to the issues in this case, necessary for a fair adjudication of the issues and therefore subject to production by the holder.

2.      Whether the Pacers Group can more readily bear the costs of the discovery
        than the United States.

Arguing that any person or entity, even one as wealthy as Herbert Simon, is better able to

absorb the costs of discovery than is the United States Government is nonsensical.  Nevertheless,

the government is funded by taxpayer dollars for which it has a duty of fiscal responsibility.  As

the litigation is important both to the taxpayers should the I.R.S. be correct in its tax assessments

and to Herbert Simon, especially considering the necessary valuation of the Pacers basketball

team that is involved in this case, the court finds that a split of the costs of compliance with the

discovery subpoena, at least with respect to the issues now before the court, to wit, the costs

associated with reviewing and producing electronic communications resulting from email

searches, is appropriate.  Frankly, for either the United States or Herbert Simon, the costs

contemplated by the parties is negligible within the relevant context; it has likely already cost

both sides more money to fight about the costs of review and production than the full amount of

such costs.

3.      Public Importance.

The parties and the Pacers Group appear to agree that matters involving the application of

tax law are matters of public importance.  *See generally Glover v. Mabrey*, 384 F. App'x 763,

770 (10th Cir. 2010).

Therefore it is **ORDERED**

1.      The United States will compensate the Pacers Group at the rate of $200.00 per

hour for the reasonable time expended for reviewing and producing communications for those

electronic searches which the Pacers Group has already run but for which it has not yet reviewed

the "hits" and produced either the responsive documents or a privilege log.  These searches

include, but are not necessarily limited to, all those delineated by the I.R.S. at footnote 3 of its Status Report [Doc. No. 26] and others of the 21 searches the Pacers Group says it has performed.  The United States will designate <u>within ten days of this Order</u> those searches by Search Number for which it demands production from the Pacer Group and for which it will pay the reasonable costs to review and produce.  After the ten-day period, to the extent a Search Number is not identified by the United States for production, no review and production will be undertaken and no costs will be assessed.

2.      No reimbursement will be due from the United States to the Pacers Group for the task of entering withheld documents on a privilege log to be produced in lieu of any document.

3.      The Pacers Group will be responsible for all costs for the production authorized in paragraph 1 above, which it has already incurred for collation of the emails and performing the 21 searches.

4.      The Pacers Group shall produce the requested documents on a rolling basis as each search group is reviewed, but in no event later than 21 days from the date of the United States' request for production as authorized in paragraph 1 above.

It is further **ORDERED**

5.      The United States and the Pacers Group shall file status reports on or before April 28, 2017, concerning the state of discovery and whether any issues remain for resolution with respect to Case No. 16–mc–00191–KMT, including whether the case may be closed.

Dated March 8, 2017.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge